653 A.2d 1000

Leroy Anthony SHAND and Floyd Jackson Bailey

v.

STATE of Maryland.

Kevin Christopher ALLEN

v.

STATE of Maryland.

Nos. 860, 861, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Feb. 13, 1995.

466

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellants.

David P. Kenney, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before ALPERT, WENNER and HARRELL, JJ.

HARRELL, Judge.

On 20 May 1994, appellants, Leroy Anthony Shand, Floyd Jackson Bailey, and Kevin Christopher Allen, were convicted by a jury in the Circuit Court for Prince George's County of first degree rape and related charges. Shand was convicted of one count of first degree rape, one count of first degree sexual offense, and one count of assault. Bailey was convicted of one count of first degree rape and one count of assault. Allen was convicted of one count of first degree rape. Appellants were sentenced as follows: Shand—thirty years for the first degree rape count, thirty years concurrent for the first degree sexual offense count, and thirty years concurrent for the assault count; Bailey—twenty years for the first degree rape count and twenty years concurrent for the assault count; Allen—eighteen years for the first degree rape count. Appellants filed timely notices of appeal to this Court, but presented their arguments in a consolidated brief.

## ISSUES

We have divided and re-phrased appellants' issues as follows to facilitate our discussion:

I. Did the trial court err by granting the State's motion *in limine* to exclude evidence that the victim had traded sex for drugs with Shand prior to the alleged rape?

II. Did the trial court err by forbidding appellants from referring to evidence that the victim had agreed with Shand to exchange sex with appellants for the forgiveness of her brother's drug debt at the time of the alleged rape?

III. Were appellants denied certain constitutional rights, including the right to confront and cross-examine their accuser and the right to due process?

IV. Was the evidence insufficient to support appellants' convictions?

## *FACTS*

Joshua Brooks and his sister, the alleged victim, lived in Apartment 401 of the Forest Creek Apartments, located at 6553 HilMar Drive in Forestville, Maryland. Brooks testified that on 9 October 1993, he had a conversation with Shand regarding money he owed Shand for drugs. Brooks explained that he would pay Shand "the next day by 12 o'clock." According to Brooks, Shand was "mistaken" and returned to Brooks' apartment at 10:30 p.m. that evening with four other men, including Bailey, Allen, and Lamiah Hall[1], to collect payment. Brooks testified that Shand and the four men met him outside of his apartment building and that they discussed the debt for approximately thirty minutes. At the conclusion of their conversation, Brooks, Shand, and the four men went upstairs to Brooks's apartment to ask the victim for money. After the victim explained that she had no money, Shand insisted that Brooks go back outside the apartment. Once outside, Brooks testified that the men circled him and began "patting [his] pocket and ... took [his] stuff out of [his]

---

1. Lamiah Hall was tried with appellants and acquitted of all charges.

pockets," including a pocket knife.[2] According to Brooks, Bailey stated that they "were going to bust [Brooks] up." Brooks was then permitted, from a neighbor's apartment, to telephone his other sister, Judy Brooks, to ask her for money to pay Shand. Brooks then called his brother, Grady Lane, to ask him for the money.

After making the two telephone calls, Brooks went back to his apartment. He testified that the door was open and that when he entered, he was instructed by Hall to "stand still." Brooks stated that he did not see the victim at that time. Shand then appeared from the bedroom, again requesting his money; Brooks responded that he "was waiting on some money."

Brooks next let McDaniel Alvin Thomas (Alvin), a friend of the victim's, into the apartment. Brooks testified that at the time he opened the door for Alvin, four of the men were in the back while Hall, Brooks, and Alvin remained in the front of the apartment. Brooks then asked Alvin for money to pay Shand; Alvin explained he had no money.

Brooks "decided then that [he] was going to try to go get some help." He left the apartment and went down the stairs. Once outside, he attempted to jump some bushes and injured his right knee. Brooks hobbled to a nearby apartment building basement and remained there until the morning when he was taken by ambulance to Prince George's County Hospital.

The victim testified that at approximately 11:00 p.m. on 9 October 1993, Brooks, appellants, and Lamiah Hall entered her apartment. Shand, from whom the victim admitted buying drugs in the past, explained that Brooks owed him money for drugs. Soon thereafter, all the men, including Brooks, left the apartment. The victim testified that when Shand returned, he threatened her with her brother's pocket knife and led her into the bedroom. According to her, Shand then "put

---

**2.** Bailey testified that he never witnessed anyone take anything from Brooks or surround him, as Brooks had testified. Bailey also stated that he never saw a knife.

his penis in [her] mouth and in [her] vagina several times" without her consent. A short time later, four men entered the bedroom, including Bailey and Allen, and Shand told "each one of them what to do, when to go first, when to go second, when to go third, or whatever." The victim testified that, notwithstanding her pleas to stop and that they were hurting her, "[e]ach one of those three put their penis in [her] mouth and in [her] vagina over, and over, and over, and over." [3]

The victim explained that, after what seemed like hours, the men left her apartment. She immediately locked the door behind them. At this time, Alvin was sitting in the living room. The victim testified that she told Alvin that "those guys came in here and raped me because they wanted money from my brother." The victim then took a bath for approximately one-half hour, had a drink, and walked to a nearby pay telephone to call her sister. The victim testified that she told her sister "that some guys came in my house, wanted money, saying Josh owed them money and they raped me."

Shortly after the victim returned home, she was visited by Grady Lane and several police officers. She explained that she had been raped and gave the police officers descriptions of her attackers. The officers then escorted the victim to the police station. On the way to the station, the victim saw and identified Allen, Hall, and Shand as three of the men who had raped her. All three were arrested and a pocket knife was seized from Shand. Bailey was arrested one month later.

Appellants were subsequently charged with first degree rape and related charges. At the close of the State's case, appellants moved for judgments of acquittal. The circuit court denied the motions as to all counts.

---

**3.** Bailey testified that he and Hall entered the bedroom and witnessed Shand having sexual intercourse with the victim. He stated that he did not hear the victim screaming or saying stop. According to Bailey, the victim then had consensual sexual intercourse with Hall, Allen, and himself.

Prior to the close of the defense's case,[4] appellants renewed their motions for judgment of acquittal as to all counts and the circuit court again denied the motions.

Additional facts will be provided as warranted by our discussion.

## DISCUSSION

### I.

Appellants contend that "the lower Court erred in ruling that [they] could not present evidence of the drugs for sex trade between Appellant Shand and [the victim] that had taken place two weeks before the alleged rape." The State suggests, however, that the circuit court properly excluded this evidence under Maryland's Rape Shield Law, Md.Code Ann., Art. 27, § 461A (1992 Replacement Volume & 1994. Supp.).

Section 461A(a) of the Rape Shield Law provides:

(a) *Evidence relating to a victim's chastity.*—Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for commission of a rape or sexual offense in the first or second degree. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if the judge finds the evidence is relevant and is material to a fact in issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value, and if the evidence is:

(1) Evidence of the victim's past sexual conduct with the defendant; or

(2) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or trauma; or

---

**4.** The record indicates that "all counsel ... agreed to argue motion for judgments [sic] of acquittal at this time."

(3) Evidence which supports a claim that the victim has an ulterior motive in accusing the defendant of the crime; or

(4) Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.

To be admissible under this statute, evidence of "specific instances of a victim's prior sexual conduct" must "fit within one of the enumerated exceptions and be found by the trial court to be relevant and material to a fact at issue in the case and to have probative value greater than its inflammatory or prejudicial nature." *Johnson v. State*, 332 Md. 456, 464, 632 A.2d 152 (1993). Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity, however, are per se excluded under the Rape Shield Law. As explained in *Lucado v. State*, 40 Md.App. 25, 32, 389 A.2d 398 (1978):

> This part of the statute does two things. The first sentence flatly and unconditionally excludes opinion evidence relating to a victim's "chastity" and evidence relating to the victim's reputation for "chastity." There are no exceptions to this prohibition, which appears to apply whether the evidence is offered by the prosecution or the defense. The balance of the subsection deals with something quite different—specific instances of the victim's "prior sexual conduct"—evidence of which is admissible under certain conditions.

Evidence that neither relates to a victim's reputation for chastity nor is evidence of specific instances of prior sexual conduct is not governed by the Rape Shield Law, and is subject to the traditional rules of evidence.[5] *See* Md.Rules 5–101 *et seq.*

---

**5.** Therefore, it would be preferable, and in some cases essential, for the trial judge to put on the record his or her findings and determinations as to the admissibility of such evidence under whatever principles are being applied.

■ The Rape Shield Law was enacted to shield victims of rape and first and second degree sexual offense from general inquiry at trial into their chastity or lack of chastity and prior sexual conduct whenever the defense of consent was raised. *Johnson*, 332 Md. at 464, 632 A.2d 152. "Another reason to protect rape victims from harassment on the witness stand has been to encourage more victims to report crimes and help bring rapists to justice." *White v. State*, 324 Md. 626, 634, 598 A.2d 187 (1991). It follows that the Rape Shield Law was enacted

> "to prevent defense counsel from putting the victim 'on trial,' from unfairly invading the victim's privacy and from deflecting the jury's attention from the true issue. The rule reflects recognition that the trial process at best is traumatic to the victim of sexual abuse. If she has reason to believe the most intimate details of her life are going to be bandied about the courtroom, many victims will decide the game is not worth the candle and decline to file a complaint."

*Id.* (quoting *Goodson v. State*, 566 So.2d 1142, 1149–50 (Miss. 1990)). *See also Johnson*, 332 Md. at 464–65, 632 A.2d 152.

■ Notwithstanding these concerns, the statute is not inflexible. *White*, 324 Md. at 636, 598 A.2d 187. Indeed, "the legislative intention was not to prevent a defendant from being able to present a defense to a rape charge or to hamstring him or her unduly in his or her effort to do so." *Johnson*, 332 Md. at 465, 632 A.2d 152. "The exceptions written into the law provide ways for a defendant to bring up the victim's conduct when necessary to the defense." *White*, 324 Md. at 636, 598 A.2d 187. In fact, the Senate Judicial Proceedings Committee stated that it

> "took cognizance of the broad based support of the concept of limiting evidence relating to prior sexual conduct of a rape victim and that such a limitation would probably result in an increase in the percentage of rapes reported; that a statutory response to the inherent sensitivities of a traumatized victim could accommodate the constitutionally mandated rights and protections properly afforded a defendant in

our criminal justice system; and that the weighing of inflammatory nature *versus* the probative value of evidence of specific instances of prior sexual conduct precludes possible admission of highly prejudicial evidence of limited probative value. Presently, it is the practice of some courts to admit evidence of any probative value irrespective of its inflammatory nature."

*Id.* (quoting Report of Senate Judicial Proceedings Committee on Senate Bill No. 399, at 4). *See also Johnson,* 332 Md. at 465, 632 A.2d 152.

In the case *sub judice,* the State moved *in limine* under the Rape Shield Law to exclude evidence of any alleged prior offer by the victim to exchange sex for drugs with Shand. Counsel for Shand made the following proffer:

Your Honor, my client, Mr. Shand, would testify that he first met this lady about two weeks prior to this occurring, and the nature of that meeting was that she offered to him, personally, sex for drugs. I think that's an exception of specific exclusion under the rape shield statute.

As directed by section 461A(b) [6] of the Rape Shield Law, the circuit court conducted an *in camera* hearing at which the victim testified that, two weeks prior to the incident in question, she and a friend named Rod approached Shand to purchase drugs. According to the victim, Shand offered her drugs in exchange for sex, to which she "told him no, [she] didn't want to." Shand did not testify in support of his proffer. There were no other witnesses who testified at the *in camera* proceeding.

During arguments to the court, counsel for Shand explained that

[t]he only variation of the testimony was she was saying Mr. Shand asked her, whereas I'd proffer to the Court that Mr.

---

**6.** Section 461A(b) provides in pertinent part:

(b) *In camera hearing.*—Any evidence described in subsection (a) of this section, may not be referred to in any statements to a jury nor introduced at trial without the court holding a prior in camera hearing to determine the admissibility of the evidence.

> Shand would say it's the other way around. And I believe its sufficient for the jury to determine. It comes within the rape shield conduct.

The circuit court, however, concluded simply that it was "absolutely prevented by the Rape Shield Statute," and granted the State's *in limine* motion.

Because the trial judge failed to particularize her reasons for excluding Shand's proffer under the Rape Shield Law, we must decide, under the analysis set forth *supra*, whether such evidence was properly excluded.[7] As a threshold determination, because the proffer suggests on its face a specific prior incident, we must decide whether Shand's proffer constitutes a specific instance of the victim's prior sexual conduct. To answer that question, we are put to the task of defining the term "sexual conduct," or at least determining what the General Assembly meant when it used that term in section 461A. The rule which we apply in making that determination was stated in *Maryland Medical Serv., Inc. v. Carver*, 238 Md. 466, 209 A.2d 582 (1965):

> In construing the words used in the statute, this Court will consider them in their natural and ordinary signification; if, however, the words used in the statute are of doubtful meaning, this Court in determining the legislative intent, will consider not only their usual and literal meaning, but their meaning and effect considered in the light of the objectives and purposes of the enactment and the consequences resulting from one meaning rather than another

---

7. Although the victim testified that it was Shand, and not her, that proposed the trade, the Rape Shield Law does not permit the trial judge to make a credibility determination at the *in camera* proceeding. Instead, the trial judge must evaluate the proffered evidence under the admissibility guidelines set forth in the statute, i.e., relevancy, materiality, weighing of prejudicial effect versus probative value, and the four additional and disjunctive evidentiary criteria. Competency of the proffered evidence is not included under those guidelines. Therefore, we accept Shand's proffer as stated and review its admissibility under section 461A as an issue of law. *See Montgomery County v. Maryland Soft Drink Ass'n*, 281 Md. 116, 122, 377 A.2d 486 (1977).

meaning, with the real legislative intent prevailing over the intent indicated by the literal meaning of the words.

*See also Fairchild Indus. v. Maritime Air Serv., Ltd.,* 274 Md. 181, 185–86, 333 A.2d 313 (1975); *Truitt v. Board of Public Works,* 243 Md. 375, 394, 221 A.2d 370 (1966).

In pursuing our quest for the true meaning of "sexual conduct," we start with a brief survey of Maryland case law involving the admissibility of evidence of a victim's "prior sexual conduct" under the Rape Shield Law. Those cases suggest that "sexual conduct," as used in the statute, requires some type of physical sexual contact. *See, e.g., Johnson v. State,* 332 Md. 456, 632 A.2d 152 (1993) (evidence that victim had sexual intercourse with defendant); *Miles v. State,* 88 Md.App. 248, 594 A.2d 634 (evidence that victim had prior sexual relationship with defendant), *cert. denied,* 325 Md. 95, 599 A.2d 447 (1991); *Testerman v. State,* 61 Md.App. 257, 486 A.2d 233 (1985) (evidence that victim had engaged in a series of amicable and amorous encounters with defendant over a period of years); *Joyce v. State,* 59 Md.App. 237, 474 A.2d 1369 (1984) (evidence that victim had group sex with defendant and others); *Cantrell v. State,* 50 Md.App. 331, 437 A.2d 696 (1981) (evidence that victim was into "kinky-type sex" with defendant).

A New York appellate court, interpreting a similar provision regarding the admissibility of evidence of a rape victim's past sexual conduct,[8] held that "[e]vidence of a victim's sexual conduct is inadmissible unless, *inter alia,* it relates to specific instances of prior sexual *contact* with the accused." *People v.*

---

**8.** The relevant portion of New York's Rape Shield Law provided:
§ 60.42. Rules of evidence; admissibility of evidence of victim's sexual conduct in sex offense cases

Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence. . . .

N.Y.Crim.Proc.Law § 60.42 (McKinney 1992 & 1995 Supp.) (this statute was enacted on September 1, 1975 and has not been amended to date).

*Hauver,* 129 A.D.2d 889, 514 N.Y.S.2d 814, 815 (1987) (emphasis added). *But see People v. Franklin,* 25 Cal.App.4th 328, 30 Cal.Rptr.2d 376, 380 (1994) ("sexual conduct ... encompasses any behavior that reflects the actor's or speaker's willingness to engage in sexual activity"); *People v. Casas,* 181 Cal.App.3d 889, 226 Cal.Rptr. 285, 289 (statement that victim offered to have sexual intercourse for money "reflects the speaker's willingness to engage in sexual intercourse," and was therefore deemed "sexual conduct"), *cert. denied* 479 U.S. 1010, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986); *cf. Wood v. Alaska,* 957 F.2d 1544, 1551 (9th Cir.1992) (victim's communications with defendant may be considered "sexual conduct").

The legislative intent and purpose of section 461A indicates that "sexual conduct" must not only involve physical contact, but the physical contact must evidence the victim's willingness to engage in either vaginal intercourse or a sexual act. The Rape Shield Law permits the admission of "specific instances of a victim's prior sexual conduct" in "any prosecution for commission of a rape or sexual offense in the first or second degree" where such conduct has special relevance to the defense of consent. *White,* 324 Md. at 636, 598 A.2d 187. Rape is defined as "vaginal intercourse with another person by force or threat of force against the will and without the consent of the other person." Md.Code Ann., Art. 27, §§ 462 & 463 (1992 Replacement Volume & 1994 Supp.). Sexual offense is defined as a sexual act with another person by force or threat of force against the will and without the consent of the other person. *Id.* § 464. Therefore, the only "sexual conduct" of the victim that could be relevant to the defense of consent in a prosecution for rape or first or second degree sexual offense is physical contact that would indicate a willingness to engage in the type of sexual activity included in those offenses, i.e., vaginal intercourse or a sexual act.

Therefore, we hold that "sexual conduct," as that term is used in Maryland's Rape Shield Law, requires physical contact indicating a willingness to engage in either vaginal inter-

course [9] or a sexual act.[10] It follows that where evidence proffered by a defendant in a rape or covered sexual offense trial does not allege physical contact with the victim indicating a willingness to engage in such activity, that evidence is not admissible under the Rape Shield Law under the specific instance exception to the exclusionary intent of that law.

We caution, however, that not all such evidence of physical contact is admissible under the statute. For example, proffered evidence of physical contact with the victim evidencing a willingness to engage in a sexual act, i.e., something other than vaginal intercourse, might well be excluded at a rape trial on the grounds that such evidence is not relevant to the issue of consent because it involves a lesser degree of sexual activity than that charged, i.e., vaginal intercourse. Such evidence also might be deemed immaterial, inflammatory, or otherwise excludable under section 461A.

In the case *sub judice*, it is clear from the record that Shand's proffer alleged merely an unaccepted and unconsummated verbal offer to trade sex in exchange for drugs. There was no allegation of any *physical contact* on behalf of the victim indicating her willingness to engage in vaginal intercourse or a covered sexual act. Shand's proffer, therefore, cannot be considered "prior sexual conduct" under the Rape

---

**9.** Section 461(g) provides:

"Vaginal intercourse" has its ordinary meaning of genital copulation. Penetration, however slight, is evidence of vaginal intercourse. Emission of semen is not required.

Md.Code Ann., Art. 27, § 461(g) (1992 Replacement Volume & 1994 Supp.).

**10.** Section 461(e) provides:

"Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonable construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes.

*Id.* § 461(e).

Shield Law, and is consequently not admissible under the specific instance exception of section 461A.

This does not, however, conclude our inquiry. The trial judge indicated that Shand's proffer was "absolutely prevented by the Rape Shield Statute." As we already have determined that the evidence is not prior sexual conduct of the victim, the only other explanation for excluding such evidence under the Rape Shield Law is that it is evidence relating to the victim's reputation for chastity or opinion evidence relating to the victim's reputation for chastity.

In *Lucado v. State,* 40 Md.App. 25, 389 A.2d 398 (1978), this Court explored the definition of the term "chastity" as it is used in section 461A. After quoting five somewhat varying definitions of the term "chastity" from *Webster's New Twentieth Century Dictionary (Unabridged),* this Court concluded that "it does not appear that there is a single 'natural and ordinary signification' of the word." *Id.* at 34, 389 A.2d 398. We agree and therefore are forced, as was this Court in *Lucado,* to rely on the legislative intent of the Rape Shield Law in order to determine whether chastity encompasses or refers to evidence of an unconsummated and unaccepted oral offer to trade sex in exchange for drugs.

In *Lucado,* this Court seems to indicate that there are two exclusive classifications of evidence within the purview of the Rape Shield Law—evidence relating to the victim's chastity and evidence of specific instances of sexual conduct. *Id.* at 39, 389 A.2d 398. Implicit in this distinction is the notion that evidence relating to a victim's chastity is general in nature, and does not include evidence as to "specific instances." We perceive that, lurking beneath the surface of this Court's discussion and analysis in *Lucado,* is the conviction that although evidence of specific instances could not be considered evidence of reputation for chastity, such evidence would necessarily be considered "prior sexual conduct," and therefore fall within the ambit of the Rape Shield Law. The proffered evidence of a specific instance in the case *sub judice,* however, did not involve, as explained *supra,* sexual conduct within the

meaning of the statute, and therefore presents an unforeseen consequence of this Court's discussion in *Lucado* of these two evidentiary classifications. If, as the logical extension of the analysis in *Lucado* suggests, evidence of specific instances cannot be considered evidence of a victim's reputation for chastity, then, as in the instant case, such evidence would not be covered by the Rape Shield Law. Such a result, it would seem, contravenes the clear legislative intent of the statute.

As noted *supra*, the Rape Shield Law was enacted to protect rape victims from embarrassing disclosure of intimate details about their private lives. *White*, 324 Md. at 635, 598 A.2d 187. Therefore, we carry forward this Court's discussion in *Lucado* of the term "chastity" and conform it to the legislative intent of section 461A to hold that evidence of specific instances not involving physical contact indicating a willingness to engage in vaginal intercourse or a sexual act can be excluded under the Rape Shield Law as evidence relating to a victim's chastity. As Shand's proffer that the victim offered him sex in exchange for drugs constitutes such evidence, it was properly excluded by the trial judge under the Rape Shield Law as evidence of the victim's reputation for chastity.

## II.

Appellants next argue that the trial court erred by forbidding reference to evidence that the victim had agreed with Shand, at the time of the alleged rape, to exchange sex with appellants for the forgiveness of her brother's drug debt. Specifically, appellants contend that the circuit court erred in sustaining the State's objection to defense counsel's remarks made during opening statements. The colloquy was as follows:

[COUNSEL FOR ALLEN]: The question in the case of rape is, did she consent. Did she consent? That's a question you must answer. Did she consent? And I can sum this whole case up in one word, if I could, and that word is trade.

We believe that the evidence will show that this case is based upon a trade, a trade between [the victim] and Mr. Shand, a trade which included—

[STATE]: Objection, Your Honor.

[COURT]: Sustained.

[STATE]: For reasons already stated.

[COURT]: Sustained.

Appellants contend that the circuit court's ruling on this objection precluded them from introducing evidence that the victim consented to sexual intercourse with appellants. The State, on the other hand, argues that the circuit court's ruling was only a reaffirmation of the court's prior ruling on the motion *in limine,* namely that appellants were precluded from referring to the victim's alleged offer to Shand of sex in exchange for drugs two weeks earlier. Therefore, argues the State, this issue is not preserved because appellants never attempted "to introduce any evidence of an alleged trade on the night of the offense, nor did appellant[s] ever ask any questions pertinent to this matter on cross-examination of the victim."

The State's written motion *in limine* requested only that the court "bar the defendant from inquiring into any prior sexual conduct of the . . . victim." At the motion hearing, the State reiterated its position: "[U]nder the rape shield statute . . . there should be no testimony about any alleged prior sexual conduct of this victim. We'd ask the Court to rule also that that should not be mentioned in opening statement, either." The State did not assert, and the court did not rule, that evidence of an alleged trade on the night of the offense was inadmissible. Therefore, the State's objection to Allen's opening argument, "[f]or the reasons already stated," indicated that the State, as well as the trial judge, interpreted counsel's incomplete opening remarks as referring to that which was presumptively resolved by the State's motion *in limine.*

If appellants, as they allege in their brief, indeed interpreted the court's ruling as precluding further inquiry into the

alleged trade on the night of the offense, it was incumbent upon them to "make[ ] known to the court the action that they desire[d] the court to take or the objection to the action of the court." Md. Rule 4–323(c). As explained in *Graham v. State,* 325 Md. 398, 411, 601 A.2d 131 (1992), unless a party "had no opportunity to do so, he is required to have made known to the court his objection to the ruling at the time the ruling was made." This rule is premised on the notion that "[t]he ends of justice are served by the avoidance of delay and expense incident to appeals and new trials upon grounds of objection which might have been obviated and corrected in the trial court if the question had been ruled upon." *Davis v. State,* 189 Md. 269, 273, 55 A.2d 702 (1947); *see also Bundy v. State,* 334 Md. 131, 638 A.2d 84 (1994).

The record in this case reflects that appellants had an adequate opportunity to object to the trial judge's ruling on the State's objection. Had appellants asked the trial judge whether her ruling was to preclude evidence of an alleged trade on the night of the rape, or merely an extension of that which was presumptively decided by the motion *in limine,* the trial judge would have been afforded an opportunity to rule in that regard. Appellants' failure to clarify or to object under these circumstances amounted to a waiver of the objection. *Graham,* 325 Md. at 411, 601 A.2d 131; *Kennedy v. Crouch,* 191 Md. 580, 586, 62 A.2d 582 (1948). The issue is therefore not preserved for appeal.

### III.

As an apparent afterthought, appellants now argue certain violations of their constitutional rights, including the right to confront and cross-examine an accuser and the right of due process. These arguments were not made to the circuit court and thus are not properly before us. Md.Rule 8–131(a); *White v. State,* 324 Md. 626, 640, 598 A.2d 187 (1991); *Henry v. State,* 273 Md. 131, 139, 328 A.2d 293 (1974).

### IV.

Finally, appellants argue that the evidence adduced at trial was insufficient to support their convictions. As a threshold

issue, however, the State contends that, because Shand and Bailey did not argue their motions for judgment of acquittal with the requisite specificity, they failed "to preserve the matter for appeal."

We shall first discuss the State's preservation argument, reserving our sufficiency analysis for those claims properly preserved for our review.

### Failure to Preserve

Maryland Rule 4–324(a) provides:

**(a) Generally.**—A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. *The defendant shall state with particularity all reasons why the motion should be granted.* No objection to the motion for judgment of acquittal shall be necessary. A defendant does not waive the right to make the motion by introducing evidence during the presentation of the State's case.

(Emphasis added.) Moreover, a "failure to particularize the reasons for granting a motion for judgment of acquittal in accordance with the rule's requirements necessarily . . . result[s] in a failure to preserve the issue for appellate review." *Muir v. State,* 308 Md. 208, 219, 517 A.2d 1105 (1986); *see also State v. Lyles,* 308 Md. 129, 135, 517 A.2d 761 (1986).

▮▮▮ In the case *sub judice,* counsel for Bailey, at the close of the State's case, made the following motion for judgment of acquittal:

On behalf of Mr. Bailey, Your Honor, I'd like to make a motion for a judgment of acquittal as to each and every count in the indictment, specifically Count 5. I would like to concur and adopt Mr. Trainor's argument he made on behalf of his client regarding the carrying a dangerous weapon openly. There's no evidence that Mr. Bailey had assisted him in using it or anything of that nature. *As to the remaining counts, the Counts 1 through 4, regarding*

*the sexual offenses and the rape as to [the victim], we would submit generally as to Mr. Bailey. Count 6 as it relates to Mr. Brooks, we'll submit generally.*

(emphasis added). Although counsel argued specifically his motion for judgment of acquittal on Count 5, carrying a dangerous weapon openly, counsel failed to argue with the requisite particularity his motion as to Counts 1 through 4, first degree rape, second degree rape, first degree sex offense, and second degree sex offense, as well as to Count 7, assault.[11] As explained in *Garrison v. State*, 88 Md.App. 475, 478, 594 A.2d 1264 (1991) (citing *Lyles*, 308 Md. at 134–36, 517 A.2d 761), *cert. denied*, 325 Md. 249, 600 A.2d 418 (1992):

> Appellant, when afforded an opportunity to present argument on his motions for judgment of acquittal at the close of the State's case-in-chief and again at the close of all of the evidence, chose to "submit" without articulating the particularized reasons which would justify acquittal. Accordingly, he has waived any complaint with respect to the sufficiency of the evidence.

Therefore, counsel's decision to "submit generally" as to Counts 1 through 4 and Count 7 effectively "waived any complaint with respect to the sufficiency of the evidence." [12]

On behalf of Shand, counsel made the following motion for judgment of acquittal at the close of the State's case:

> On behalf of Leroy Shand, Your Honor, I would move for judgment of acquittal on Count 1, first degree rape in that the State hasn't established a prima facie case in the light most favorable to it and I would argue that includes Count 2 which is second degree rape. Count 3 is a first degree sex offense. We don't believe there's any sufficient evidence presented by the State in regards to sexual contact, unwant-

---

**11.** Although counsel refers to Count 6 in his motion, it is clear from his reference to Brooks that he was in fact referring to Count 7, assault.

**12.** As Bailey was only convicted of Counts 1 and 7, first degree rape and assault, he maintains no sufficiency of the evidence argument on appeal.

ed sexual contact with [the victim] such as should be determined by the jury. And I would argue as to Count 4—can I look at some other direction while I argue this—and Count Number 5, caring [sic] a dangerous weapon openly I believe that's the knife, in that case, Your Honor, that's the brother's knife, and I believe there's ample testimony that he had the knife and also that Mr. Shand had the knife, but yet, how the State can discriminately prosecute my client, but there's nothing about Mr. Brooks carrying a dangerous weapon openly, so they could not consider that a dangerous weapon. So, on Number 7, we'd move for judgment of acquittal on assault of Joshua Brooks. I don't believe there's sufficient evidence that Mr. Shand in any way assaulted Mr. Brooks during the course of this incident.

Counsel for Shand explained that, as to Counts 1 through 4, the State failed to "establish[ ] a prima facie case in the light most favorable to it. . . . We don't believe there's any sufficient evidence presented by the State in regards to sexual contact, unwanted sexual contact with [the victim] such as should be determined by the jury." As to Count 5, counsel argued that Shand was being prosecuted discriminately because there was evidence that Brooks was also carrying the knife, but was not charged. Finally, as to Count 7, counsel argued: "I don't believe there's sufficient evidence that Mr. Shand in any way assaulted Mr. Brooks during the course of this incident."

The State, in arguing that Shand failed to preserve his sufficiency argument for appeal in their brief, cites *Graham,* 325 Md. at 416–17, 601 A.2d 131, among other cases, for the proposition that "[a] general argument that the evidence is insufficient is not enough to preserve a particular sufficiency challenge for review." We disagree. Our reading of *Graham,* along with the other cases cited by the State, indicates that "[a] claim of insufficiency of the evidence is ordinarily not preserved *if the claim is not made part of the motion for judgment of acquittal." Id.* at 417, 601 A.2d 131 (citing *Muir,* 308 Md. at 218–19, 517 A.2d 1105; *Lyles,* 308 Md. at 135–36, 517 A.2d 761). We believe Shand adequately made a claim of

insufficiency of the evidence for Counts 1 through 4 and Count 7 as part of his motion for judgment of acquittal, thereby properly preserving those claims for our review.[13]

## Sufficiency of the Evidence

The standard for our review of the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Bloodsworth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986). Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991). In performing this fact-finding role, the fact finder has authority to decide which evidence to accept and which to reject. In this regard, it may believe one witness's testimony, but disbelieve another witness's testimony. *Muir v. State,* 64 Md.App. 648, 654, 498 A.2d 666 (1985), *aff'd,* 308 Md. 208, 517 A.2d 1105 (1986). Circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused. *Finke v. State,* 56 Md.App. 450, 468–78, 468 A.2d 353 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218, *cert. denied,* 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416 (1984).

In light of the foregoing standard, we shall discuss Allen and Shand independently.

## Allen

Specifically, Allen argues that, because the victim was unable to identify him as having committed the rape, there

---

**13.** As Shand was acquitted of the carrying a dangerous weapon openly charge, his counsel's failure to argue specifically insufficiency of the evidence on that Count is of no consequence in this appeal.

was insufficient evidence to convict him of first degree rape. We disagree.

Article 27, section 462 of the Maryland Annotated Code provides the elements of rape in the first degree:

(a) *What constitutes.*—A person is guilty of rape in the first degree if the person engages in vaginal intercourse with another person by force or threat of force against the will and without the consent of the other person and:

(1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably concludes is a dangerous or deadly weapon; or

(2) Inflicts suffocation, strangulation, disfigurement, or serious physical injury upon the other person or upon anyone else in the course of committing the offense; or

(3) Threatens or places the victim in fear that the victim or any person known to the victim will be imminently subjected to death, suffocation, strangulation, disfigurement, or serious physical injury, or kidnapping; or

(4) The person commits the offense aided and abetted by one or more other persons; or

(5) The person commits the offense in connection with the breaking and entering of a dwelling house.

Md.Code Ann., Art. 27, § 462 (1992 Replacement Volume & 1994 Supp.). The victim testified to the following facts regarding Allen: Allen, along with the other appellants, entered her apartment on 9 October 1993 trying to collect a drug debt owed by her brother; Shand led her into the bedroom, holding an open knife and threatening her, and repeatedly had oral and vaginal sex with her without her permission; Shand instructed "three of them" also to have oral and vaginal sex with her without her permission; the victim identified Allen on the morning of the offense as one of the men who had raped her.

Although the victim never identified Allen by name as having raped her, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that the victim's descrip-

tion of the "three of them" was a reference to the three men charged with raping her, including Allen. As the facts indicated that Allen engaged in vaginal intercourse with the victim by force or threat of force without her consent, and was aided and abetted by one or more persons, we hold that the evidence was sufficient to convict Allen of rape in the first degree.

## Shand

Shand also argues that the evidence was insufficient to convict him of first degree rape, first degree sex offense, and assault against Brooks. Again, we disagree.

The victim testified to the following facts regarding Shand: Shand, with the other appellants, entered her apartment on 9 October 1993 to collect on a drug debt owed by her brother; Shand led her into the bedroom, holding an open knife, threatening to "bust" her up; Shand had oral and vaginal sex with her without her consent; Shand instructed the other appellants to rape her; the victim identified Shand the morning of the offense as one of the men who had raped her.

Brooks also testified to the following facts concerning Shand: he owed Shand money for a drug debt; Shand and four others came to collect the drug debt on 9 October 1993; the five men, including Shand, surrounded him; one of the men threatened to "start popping;" the group of men started pushing him and "forced [him] to go down the steps."

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Shand committed first degree rape against the victim. The evidence indicated that he engaged in vaginal intercourse with the victim by force or threat of force without her consent, and was aided and abetted by one or more persons. As the only difference between first degree rape and first degree sex offense is that "rape in the first degree can only be committed by a male upon a female," Richard P. Gilbert & Charles E. Moylan, Jr., *Maryland Criminal Law* 74–75 (1983 & 1994 Supp.), the evidence was

also sufficient to support Shand's conviction of first degree sex offense.

As to the assault conviction, the principal elements include the threat to strike accompanied by the present apparent ability to carry out that threat. *Id.* at 47. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Shand assaulted Brooks. Brooks testified that he owed Shand a drug debt and that Shand had come, accompanied by four men, to collect. Moreover, Brooks testified that the men surrounded him, threatened him, pushed him, and forced him down the stairs. We hold such evidence was sufficient to convict Shand of assault.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS IN EQUAL SHARES.