**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0362n.06

**No. 09-2481**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | | **FILED** |
| | | *May 27, 2011* |
| TROY D. OGLE, | ) | LEONARD GREEN, Clerk |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| RICK HOCKER, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MERRITT, COOK, and WHITE, Circuit Judges.

COOK, Circuit Judge. After the parties attended a ministry conference in Europe, some not-so-faith-abiding descriptions of their trip surfaced within their shared Christian community. Troy Ogle then sued his former friend, Rick Hocker, for defamation and intentional infliction of emotional distress (IIED). The district court granted Hocker summary judgment, and Ogle now asks us to reverse that decision. We affirm in part and reverse in part.

I.

The parties' mutual affiliation with The Church of God (COG) fostered the relationship that drives this sordid suit. Ogle, a COG-licensed international evangelist, became friendly with Hocker, an ordained COG bishop, through several COG meetings and events. At the close of one of these

events, a church camp, Ogle invited Hocker to accompany him on a ten-day ministry trip to Belgium.

Hocker agreed—but his journey abroad ultimately lasted only one day. Both the tenor of their

conversation on the trans-Atlantic flight and Ogle's actions upon entering their shared hotel room

struck Hocker as homosexual overtures. Hocker caught the next flight home. He then reported

Ogle's behavior to his presiding COG bishop; preached about the incident (without naming Ogle)

in three sermons at his Virginia Beach church; and repeated the allegations to a number of

individuals on multiple occasions.

Ogle, aggrieved, filed this action, which is now on its third trip to the Sixth Circuit. In the

decision underlying the instant appeal, the district court granted Hocker summary judgment on

Ogle's defamation claim and his defamation-dependent IIED claim.

II.

In Michigan, a prima facie case of defamation consists of four elements: (1) a false and

defamatory statement; (2) publication to a third party; (3) fault—at least negligence—in publishing

the statement; and (4) "either actionability of the statement irrespective of special harm (defamation

per se) or . . . special harm caused by publication (defamation per quod)." *Colista v. Thomas*, 616

N.W.2d 249, 254 (Mich. Ct. App. 2000). The district court, finding Ogle's proof on the last element

insufficient, held that he failed to establish either (A) defamation per se or (B) special harm. *Ogle*

*v. Hocker*, 669 F. Supp. 2d 795, 801–04 (E.D. Mich. 2009). We address both holdings.

A.

Ogle, a married man, contends that Hocker's recounting of events occurring during their trip to Belgium constitutes defamation per se because it implied that he (1) lacks chastity; and (2) committed a criminal offense—sodomy. We find that Ogle presented sufficient lack-of-chastity evidence for his per se claim to survive summary judgment, and so we need not decide whether Hocker's statements also imputed the commission of a criminal offense.

Under the Michigan defamation statute, "[w]ords imputing a lack of chastity to any female or male are" per se defamatory. Mich. Comp. Laws § 600.2911(1); *accord Burden v. Elias Bros. Big Boy Rests.*, 613 N.W.2d 378, 382 (Mich. Ct. App. 2000) (per curiam). The district court held that Hocker's statements fall outside this per se category because he never accused Ogle of engaging in a sexual act: he accused Ogle only of being homosexual and making sexual advances, which, without the "actual commission" of a sexual act, "does not impute a lack of chastity." *Ogle*, 669 F. Supp. 2d at 802. The Michigan Legislature has never defined "chastity"—but neither law nor logic supports the distinction drawn between sexual advances and sexual acts.

Michigan case law—albeit scant—disfavors the distinction. In *Linebaugh v. Sheraton Michigan Corp.*, a female plaintiff sued a co-worker for libel after he circulated an intra-office cartoon that depicted the plaintiff and a male colleague "in a sexually compromising position." 497 N.W.2d 585, 586 (Mich. Ct. App. 1993). Citing this cartoon, the appellate court reversed summary judgment for the defendant because a "lack of chastity may be imputed by reference to acts *other*

*than promiscuous sexual intercourse*." *Id.* at 587 (emphasis added). *Linebaugh* thus suggests that an accusation of sexual conduct falling short of an explicit sexual act may indeed impute a lack of chastity to an individual.

In a different context, at least one other state court has held that an individual's reputation for "chastity" can be tarnished by specific conduct "not involving physical contact" but nevertheless "indicating a willingness to engage in . . . a sexual act." *Shand v. State*, 653 A.2d 1000, 1009 (Md. Ct. Spec. App. 1995). And as for the supporters of the advances-versus-acts distinction (the district court and Hocker), neither points to any authority—within or without Michigan—supporting the view that an accusation of "sexual acts" may impute a lack of chastity while an allegation of "sexual advances" may not.

Logic also undermines Hocker's position. Even if there were a line between lack-of-chastity-imputing sexual acts and innocuous, chastity-preserving sexual advances, Hocker's statements about Ogle must fall on the "imputing" side of that line. According to Hocker, upon checking in at the Belgian hotel, Ogle gave him a sensual kiss, cradled him on the floor in a sexual position, and stood nude in the bathroom doorway while displaying his erect penis. The reporting of such sexually charged acts suffices to impute a lack of chastity to a married minister, and Hocker provides no basis on which to accept his contrary notion.

Because Hocker's statements impute a lack of chastity to Ogle, the district court erred in granting summary judgment on the defamation per se claim.

B.

In addition to creating per se liability for lack-of-chastity-imputing statements, the Michigan defamation statute allows a plaintiff to recover actual damages for special harm, *see* Mich. Comp. Laws § 600.2911(2)(a), (7), and exemplary and punitive damages if he satisfies the statutory requirements, *see id.* § 600.2911(2)(b). According to the district court, Ogle failed to establish (1) economic damage, (2) damage to reputation and feelings, and (3) entitlement to exemplary and punitive damages.

1.

The district court granted Hocker summary judgment on Ogle's claim for economic damages because it found that (1) all of Ogle's economic damages arose from the suspension of his COG license (an injury for which Ogle admits he may not recover due to the church-autonomy doctrine), and (2) Ogle otherwise "failed to proffer a sufficiency of evidence which causally connects Hocker's allegedly defamatory statements with the economic damages that he claims to have suffered." *Ogle*, 669 F. Supp. 2d at 803.

But the district court overlooked much of the damages evidence that Ogle offered, evidence that demonstrates economic damage independent of his license suspension. The record shows, for example, that Hocker told his story to people, including ministers, outside the COG; that Ogle attempted to minister at non-COG churches—such as an independent Pentecostal congregation—but

these attempts "got shut down pretty much"; and that an unspecified number of congregations rejected Ogle's ministerial services because of the rumors about what he "had supposedly done." This evidence, viewed in the light most favorable to Ogle, suggests that he lost at least some work not because of the COG suspension, but because of Hocker's statements to individuals outside the COG.

Since Ogle offered evidence from which a jury could reasonably find that he suffered economic losses other than COG-related income, the district court erred in granting Hocker summary judgment on this damages claim.

2.

A private plaintiff, like Ogle, may recover for damage to reputation or feelings only if he proves actual malice. *Glazer v. Lamkin*, 506 N.W.2d 570, 572–73 (Mich. Ct. App. 1993) (citing Mich. Comp. Laws § 600.2911(2)(a)). Ogle has not.

To demonstrate actual malice, a plaintiff "must prove that the defendant made the statement with knowledge that it was false or with reckless disregard of the truth." *Id.* at 573. The district court, noting that ill will, spite, and hatred do not constitute actual malice, *see Grebner v. Runyon*, 347 N.W.2d 741, 744 (Mich. Ct. App. 1984), granted Hocker summary judgment because Ogle's evidence demonstrated nothing more than Hocker's anger and hostility toward Ogle. On appeal, Ogle challenges the district court's ruling by again pointing to Hocker's admissions that he felt

"angry, disturbed, . . . and hostile," "repulsed," "ticked off," and "deceived." This testimony, Ogle

contends, "leaves no doubt that [Hocker] was acting with extreme malice."

Ogle's argument fails to address the actual-malice standard, focusing again on Hocker's

emotions rather than on his knowledge or recklessness. Ogle does not argue—before either the

district court or this court—that Hocker made his statements with knowledge that they were false

or with reckless disregard for the truth. Thus, because Ogle's argument ignores the legal definition

of actual malice, we conclude that the district court did not err in granting Hocker summary

judgment on Ogle's claim for damages to reputation and feelings.

3.

Last, Ogle's complaint prayed for exemplary and punitive damages. *See* Mich. Comp. Laws

§ 600.2911(2)(b). Michigan law, however, limits eligibility for such damages to suits against media

defendants. *See Brantley v. Zantop Int'l Airlines*, *Inc.*, 617 F. Supp. 1032, 1035–36 (E.D. Mich.

1985) (dismissing a plaintiff's punitive-damages claim in his libel suit against his former employer).

The *Brantley* court aptly explained the statutory source of this media-defendant limitation:

> [Section 600.2911(2)(b)] allows exemplary and punitive damages only when plaintiff
> has demanded a retraction from defendant, and then provides that "[t]he retraction
> shall be published *in the same size type, in the same editions* and as far as practicable,
> in substantially the same position as the original libel" (emphasis added). This
> language certainly appears to apply to a media, rather than to a corporate, defendant.

*Id.* at 1035 (second alteration in original) (quoting Mich. Comp. Laws § 600.2911(2)(b)). And the

court bolstered its interpretation by comparing the current statute to past, yet parallel, versions:

> The early versions of the Michigan libel statute reveal that the language of the current statute was taken from a particular context. That context was a suit by a plaintiff against a newspaper that had allegedly libeled him. The current statute retains enough of the original wording to indicate that its exemplary and punitive damage provisions continue to apply only to media defendants.

*Id.* at 1036. We agree with the statutory analysis in *Brantley*, and—Hocker being no media defendant—affirm the grant of summary judgment here.

C.

The district court dismissed Ogle's IIED claim solely because it found his defamation claim too weak to pass summary judgment. *See Ogle*, 669 F. Supp. 2d at 804. Since we disagree in part with the district court's conclusion on the fourth element of Ogle's defamation claim, we accordingly reinstate his IIED claim.

III.

For the foregoing reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.