672 A.2d 630

**Leroy Anthony SHAND and Floyd Jackson Bailey**

v.

**STATE of Maryland.**

**Kevin Christopher ALLEN**

v.

**STATE of Maryland.**

**No. 57, Sept. Term, 1995.**

Court of Appeals of Maryland.

March 7, 1996.

662

Michael R. Malloy, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioners.

Tarra DeShields–Minnis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

We granted certiorari in this rape prosecution in order to review an interpretation of the rape shield statute, Md.Code (1957, 1992 Repl.Vol.), Art. 27, § 461A (the Statute), that was placed upon it in *Shand v. State*, 103 Md.App. 465, 653 A.2d 1000 (1995).[1] The Court of Special Appeals held "that 'sexual conduct,' as that term is used in [the Statute], requires physical contact indicating a willingness to engage in either vaginal intercourse or a sexual act." *Id.* at 480–81, 653 A.2d at 1007–08 (footnotes omitted). As explained below, we shall hold that "sexual conduct" is not so limited.

## I

The Statute generally prohibits reputation and opinion evidence relating to a victim's chastity in prosecutions for rape or sexual offense in the first or second degree. "Evidence of specific instances of the victim's prior sexual conduct" is prohibited unless the evidence clears two hurdles for admissibility. First, the trial court must find at a mandatory, in camera hearing that the evidence is relevant and material and "that its inflammatory or prejudicial nature does not outweigh

---

1. Unless otherwise indicated, all statutory references are to Md.Code (1957, 1992 Repl.Vol.), Art. 27.

its probative value." § 461A. Second, the specific instance evidence must fall within at least one of four exceptions to the prohibition against evidence of specific instances of the victim's prior sexual conduct. § 461A(a). Relevant to the contentions before us are the exceptions for:

"(1) Evidence of the victim's past sexual conduct with the defendant; or

"(2) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or trauma; or

"(3) Evidence which supports a claim that the victim has an ulterior motive in accusing the defendant of the crime[.]" [2]

*Id.*

The arguments concerning the construction of "sexual conduct" are presented against the background of two decisions by this Court, *Johnson v. State,* 332 Md. 456, 632 A.2d 152

---

2. The full text of present § 461A reads as follows:

"(a) *Evidence relating to victim's chastity.*—Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for commission of a rape or sexual offense in the first or second degree. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if the judge finds the evidence is relevant and is material to a fact in issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value, and if the evidence is:

(1) Evidence of the victim's past sexual conduct with the defendant; or

(2) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or trauma; or

(3) Evidence which supports a claim that the victim has an ulterior motive in accusing the defendant of the crime; or

(4) Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.

(b) *In camera hearing.*—Any evidence described in subsection (a) of this section, may not be referred to in any statements to a jury nor introduced at trial without the court holding a prior in camera hearing to determine the admissibility of the evidence. If new information is discovered during the course of the trial that may make the evidence described in subsection (a) admissible, the court may order an in camera hearing to determine the admissibility of the proposed evidence under subsection (a)."

(1993) and *White v. State,* 324 Md. 626, 598 A.2d 187 (1991). Initially reviewing that background will assist the reader.

In *White* the victim testified that she had been abducted and raped in the back of a van. *Id.* at 630–31, 598 A.2d at 189. Under the defendants' evidence, there was no sexual intercourse, either voluntary or involuntary. *Id.* at 632, 598 A.2d at 190. Nor was there any sexual contact, other than provocative moves and a grab by the victim who offered sex for drugs. Under the defendants' evidence, that offer was declined. *Id.* The defendants acknowledged purchasing some drugs for the victim, but they testified that she wanted more drugs. *Id.* at 631–32, 598 A.2d at 190. The theory of the defense was that the victim was angry because of the defendants' failure or refusal to purchase a sufficient quantity of drugs to satisfy the victim and that this anger motivated the false accusation of rape. *Id.* at 637, 598 A.2d at 192.

Prior to closing their case in *White,* the defendants called a witness and proffered that " 'he's going to testify that he has previous occasions when he has known that [the victim] has asked people to provide cocaine in return for sex.' " *Id.* at 632, 598 A.2d at 190. After objection by the State and in colloquy with the court, the defendants expanded their proffer, stating: " 'He's going to testify that he has had instances when she participated in sex with him for drugs.' " *Id.* at 633, 598 A.2d at 190. The trial court excluded the proffered evidence, and this Court affirmed the defendants' convictions for rape.

Inasmuch as the defense in *White* was that there was no intercourse at all, the proffered evidence of prior sexual conduct was basically irrelevant. Our analysis did not distinguish the proffer of oral solicitations of drugs in exchange for sex, absent a proffer that the sex was consummated, from the proffer of consummated exchanges of sex for drugs. Speaking through Judge Chasanow, we said in *White:*

"Even adopting the Whites' contention, it was not their declining [the victim's] offer of sex that motivated the false charge; it was their declining her request for drugs. Any

prior sexual acts or prior sexual solicitations by [the victim] could have little, if any, relevance to her alleged anger at the Whites. In addition, the fact that [the victim] may have successfully offered or traded sex for drugs in the past does not tend to show that she would become enraged with the Whites for failing to supply her with drugs and declining her alleged sexual solicitation. [The witness's] testimony would have dubious relevance to establishing that [the victim] had an ulterior motive to lie, whereas its prejudice to [the victim] and the State would be extreme."

*Id.* at 637, 598 A.2d at 192–93.

In *Johnson,* the evidence was uncontradicted that sexual intercourse had taken place. The defense was consent. Johnson testified that the victim had agreed with one William Jackson to have sex with Jackson, Johnson and a co-defendant, in exchange for drugs (to "freak for drugs"). *Johnson,* 332 Md. at 459, 632 A.2d at 153. Johnson further testified that the victim had not been paid after she had fully performed her part of the bargain. *Id.* The theory of Johnson's defense was that the victim's anger over the breach of contract motivated her false accusation of rape. *Id.* at 459, 462, 632 A.2d at 153, 154–55.

By a pretrial motion *in limine,* pursuant to § 461A(b), Johnson sought a ruling permitting him to show, through the victim's own testimony, that she had freaked for drugs on previous occasions. *Id.* at 459, 632 A.2d at 153. At that in camera hearing, Johnson "elicited testimony from the victim that she had been freaking for crack cocaine for approximately six months...." *Id.* at 459–60, 632 A.2d at 153–54. "She had freaked for crack cocaine most recently, she said, one week prior to being raped. The victim explained that when she wanted to get high, she would engage in sex for crack cocaine at anytime of the day or night." *Id.* at 460, 632 A.2d at 154. The victim denied freaking for drugs on the occasion charged, and she denied any previous sexual relations with Johnson or his co-defendant. *Id.*

The trial court ruled that the fact that the victim may have traded sex for drugs in the past did not " 'go to the issue of consent.' " *Id.* The victim's testimony was excluded because " 'the prejudicial factor is greater than any probative factor....' " *Id.* at 461, 632 A.2d at 154. This Court held that the evidence was improperly excluded, and we reversed Johnson's judgment of conviction.

Speaking through Judge Bell, we reasoned that, because the controlling issue was whether the victim was raped or freaking for cocaine, evidence that the victim had "freaked for cocaine in the past and, particularly, the very recent past, has special relevance to that issue; such evidence transcends mere evidence of bad character or, in the context of this case, sexual promiscuity." *Id.* at 471–72, 632 A.2d at 159 (footnote omitted). If the jury found that the victim had agreed to provide sex for cocaine and did not receive her drugs, the jury could infer that she had an "ulterior motive" for making a charge of rape. *Id.* at 472, 632 A.2d at 159–60. We noted that in order to introduce evidence to prove ulterior motive there must be a direct relationship between the prior sexual conduct evidence and the ulterior motive, but the connection need not "exclude any other possible interpretation of the evidence, or even ... be the most reasonable one." *Id.* at 473, 632 A.2d at 160.

Thus, we determined that

"[w]hen the [defendant] cross-examined the victim concerning her previously having freaked for cocaine, his purpose was not to show that she was ... a sexually promiscuous person; rather, it was to show that she had the disposition, displayed at some earlier time, to engage in such conduct and from that conduct coupled with her not having been paid, that she falsely accused him of rape. Proof of that particular disposition is relevant and material to the threshold determination whether, on the occasion in question, the victim was, as ... alleged, freaking for cocaine. How relevant and material depends upon the facts and circumstances of the case, including the

strength of the disposition evidence, *e.g.*, its closeness in point of time to the incident in question."

*Id.* at 472, 632 A.2d at 160 (citation omitted).[3]

We now turn to the case *sub judice*.

## II

The victim, a forty-two year old female, testified that she was gang raped by five youths on the night of October 8–9, 1993 in the apartment that she shared with her brother. The petitioners, Leroy Anthony Shand (Shand), Floyd Jackson Bailey (Bailey), and Kevin Christopher Allen (Allen), were convicted of first degree rape of the victim. Shand was also convicted of a first degree sexual offense against the victim, and Shand and Bailey were convicted of assault against the victim's brother. At the time Shand and Bailey were fifteen years old; Allen was sixteen. A fourth youth, Lamiah Hall (Hall), was tried with the petitioners and acquitted.[4]

As described by the victim in her testimony, Shand and four others came into her apartment on the night of the offense trying to collect a drug debt due to Shand from her brother. He was unable to pay. Shand's colleagues pushed the victim's brother out of the apartment, and they left. Shand, holding an open knife and threatening to "bust up" the victim, led her into her bedroom. He had oral and vaginal sex with her without her permission. Shand told the victim that he wanted to make her brother see that Shand "wasn't playing." After

---

**3.** Once the Court determined that the evidence was admissible, it then performed the statutorily mandated balancing test. Probative value is relative and depends on the individual facts and circumstances of a particular case. *Id.* at 474, 632 A.2d at 160–61. In a particular case, evidence of the victim's prior sexual conduct could be prejudicial to the victim and to the State. *Id.* Relevant facts and circumstances in *Johnson* included "the effect of the victim's addiction, and her activities during the eight hours prior to the alleged rape...." *Id.*, 632 A.2d at 161. It was also important that the victim, herself, admitted that she had traded on prior occasions. *Id.* at 475, 632 A.2d at 161.

**4.** We infer that the fifth person, known as "Dion," was never apprehended.

Shand had sex with her, the others came into the bedroom. While Shand continued to hold the open knife, he told the others what to do. Each of the others had sex with the victim without her permission. She told them to stop and told them they were hurting her.

The issue concerning the Statute evolved somewhat peculiarly. At a pretrial motions hearing that was not attended by counsel for Shand, counsel for Hall (who was later acquitted) sought a severance because the evidence would likely show that Shand "had engaged in certain drug transactions with the residents of that apartment during periods prior to the alleged incident." Hall's counsel proffered that the victim and her brother "had engaged in prior drug transactions with the defendant, Shand, [and] that there had been sexual activity involved in prior drug transactions." When the State raised the Statute in objection, Hall's counsel cited to *Johnson*. The severance was later denied, but the colloquy led the State to file a motion *in limine* seeking a ruling excluding evidence of the type alluded to by Hall in arguing the severance motion.

After the jury had been selected, but prior to opening statements, the court heard the State's motion *in limine*. Counsel for Shand said that Shand "would testify that he first met this lady about two weeks prior to this occurring, and the nature of that meeting was that she offered to him, personally, sex for drugs. I think that's an exception ... under the [Statute]." Hall's counsel "believe[d]" that "the evidence would show that that information was communicated to all of the defendants." The court determined to hold an in camera hearing and directed that the victim be called to the stand.

The State asked her whether, two weeks prior to October 8, 1993, she had offered Shand sex in exchange for drugs. The victim said "no." She said that Shand "tried to get me to do it, but I would not do it." Cross-examination developed that the victim was in the company of a man named Rod on that occasion, which was the first time that Shand ever made such an offer to the victim. Rod had something he wanted to sell in

order to obtain drugs, and the victim was seeking some drugs herself.

Shand did not testify at the in camera hearing. His counsel proffered that Shand would testify, presumably at trial, that the victim initiated the offer, and he argued that the resulting conflict would be for the jury to resolve. The court ruled:

"It's absolutely prevented by the Rape Shield Statute.

"State's motion is granted.

"[THE STATE]: Is that in regard to opening arguments?

"THE COURT: Yes."

Counsel for Bailey then requested "a ruling on the issue of impeachment of the State's witness regarding ... [an u]lterior motive to falsify." He submitted that the court had ruled "[o]nly as to the issue of the victim's pas[t] sexual conduct with Mr. Shand...." The court responded: "I'll rule during the course of trial like I rule in any other trial."

When the court inquired whether there was anything else to be taken up, the following transpired:

"[THE STATE]: We'd simply ask that since the Court will be ruling on that [i.e., impeachment by ulterior motive] as the trial proceeds, that counsel be instructed not to make any reference to that in opening statement.

"[COUNSEL FOR SHAND]: We have admonishment from the State. We have got that down pat.

"[COUNSEL FOR HALL]: I don't intend to mention that.

"[COUNSEL FOR BAILEY]: Neither do I."

The record does not reflect an express acquiescence by counsel for Allen.

The jury was then brought in, the State made its opening, and counsel for Allen made the initial defense opening. He advised the jury that there was no question that the purpose of the defendants' having been in the apartment was to collect a drug debt, and that the question would be whether the victim consented. He said:

"And I can sum this whole case up in one word, if I could, and that word is trade.

"We believe that the evidence will show that this case is based upon a trade, a trade between [the victim] and Mr. Shand, a trade which included—

"[THE STATE]: Objection, your Honor.

"THE COURT: Sustained.

"[THE STATE]: For reasons already stated.

"THE COURT: Sustained."

Shand did not testify at trial. Allen did not testify at trial. Bailey was the only defendant who testified. He said that, upon returning to the apartment, he found Shand and the victim copulating, apparently with mutual volition. He then graphically described the victim's orchestrating of the order of succeeding sex partners. Bailey's testimony, if believed, would have resulted in a finding of consent. Bailey, however, gave no evidence that the victim agreed to have sex with any one or more of the defendants in exchange for the promise, or present delivery, of drugs by any one or more of the defendants.

The jury found the petitioners guilty. Shand was sentenced to thirty years confinement, Bailey to twenty years, and Allen to eighteen years.

The petitioners appealed to the Court of Special Appeals, arguing that the ruling on the motion *in limine* and the sustaining of the State's objection to Allen's opening statement constituted error. In its brief to the Court of Special Appeals the State assumed, but did not concede, that Shand's proffer fit within the Statute's exception for "[e]vidence of the victim's past sexual conduct with the defendant." Court of Special Appeals, Nos. 860 & 861, September Term, 1994, Brief of Appellee at 4. The State submitted that the proffered evidence was, nevertheless, inadmissible because "its prejudicial and inflammatory nature outweighed its probative value." *Id.* at 5.

The Court of Special Appeals concluded that "[t]he legislative intent and purpose of section 461A indicates that 'sexual conduct' must not only involve physical contact, but the physical contact must evidence the victim's willingness to engage in either vaginal intercourse or a sexual act." *Shand*, 103 Md. App. at 480, 653 A.2d at 1007. Under that construction of the Statute, Shand's proffered evidence was not excluded by the prohibition against "[e]vidence of specific instances of the victim's prior sexual conduct." § 461A. The Court of Special Appeals then considered the Statute's prohibition against reputation or opinion evidence relating to the victim's chastity. Expanding on *Lucado v. State*, 40 Md.App. 25, 389 A.2d 398 (1978), which had explored the meaning of "chastity" in the Statute, and noting that the Statute "was enacted to protect rape victims from embarrassing disclosure of intimate details about their private lives," the Court of Special Appeals held that "evidence of specific instances not involving physical contact ... can be excluded under the [Statute] as evidence relating to a victim's chastity." 103 Md.App. at 482–83, 653 A.2d at 1008–09. Consequently, the circuit court had properly excluded the evidence proffered by Shand, and the convictions were affirmed. *Id.* at 483, 492, 653 A.2d at 1009, 1013.

The petitioners sought a writ of certiorari, which this Court issued. They argue that the Court of Special Appeals' construction of "sexual conduct" is incorrect, and that the proffer should have been allowed. They also argue that the trial court's sustaining of the objection to Allen's opening statement prevented the defense from introducing evidence that the alleged victim had agreed to a trade on the night of the offenses charged. In this Court the State argues that the Court of Special Appeals correctly interpreted "sexual conduct," and, alternatively, that the proffer was irrelevant.

III

For the reasons to be stated in Part IV, *infra*, we agree with the petitioners that Shand's proffer described "sexual conduct." Nevertheless, we affirm the judgment of the Court of Special Appeals because, on the facts of this case,

the proffer was properly excluded under principles of relevancy, applicable pursuant to the general law of evidence and the Statute.

The short answer to petitioners' contention is that there is no evidence that the victim's consent to sex with five persons was purchased on the night in question by any defendant's furnishing, or promising to furnish, drugs. Absent any such evidence, there is no basis for a *Johnson*-type argument, that is, that breach of the contract by the defendants gave rise to an ulterior motive, under the Statute's third specific instance exception, for the false accusation of rape.

Further, absent any evidence that the victim offered to trade sex for drugs on the night in question, there is little or no relevance to evidence that the victim offered to trade sex for drugs two weeks prior to the night in question. The proffered evidence, standing alone, is legally insufficient to support a finding that the victim had traded sex for drugs on the night in question. Petitioners' argument is analogous to a hypothetical motor tort trial in which the plaintiff, who has no proof that the defendant motorist was driving while drunk at the time of the accident, offers to prove that fact by evidence that the defendant was driving while drunk two weeks prior to the accident.

If Shand had taken the stand and testified to an offer by the victim of sex for drugs two weeks earlier, without also testifying that he had indeed furnished drugs for sex on the night in question, or even agreed to furnish drugs, the testimony would simply highlight the lack of consent so that the only purpose of the testimony would be to present the victim as a sexually promiscuous person. Viewing the proffer in that light manifests that the improper prejudice outweighs the probative value, if any, so that the proffer was properly rejected.[5]

---

5. In their brief petitioners also refer to a statement made by Shand at sentencing when he described a third party beneficiary contract under which the victim surrendered her body to Shand and his associates in consideration of Shand's forgiveness of the approximately $75 debt owed by the victim's brother to Shand. This theory is not even within

■ The petitioners next argue that they were prevented from introducing evidence that the victim had in fact traded sex for drugs on the night in question because the court sustained the State's objection to Allen's reference to a trade during Allen's opening statement. The argument is frivolous.

First, the objection was sustained shortly after the court had ruled that there should be no reference in opening statements to an offer of trade two weeks before the night in question. The timing of the objection and its reference to reasons previously given strongly suggest that the State and the court thought that Allen was moving into the area precluded by the motion *in limine* ruling. If Allen had proof that was not governed by the motion *in limine* ruling, it was incumbent upon Allen to make that clear. The trial court had already narrowed the scope of the *in limine* ruling by advising counsel that the court would consider evidence directed to ulterior motive as that evidence came up in the course of trial. If Allen had evidence that there had been a trade of sex for drugs on the night in question, it would be direct proof of consent and clearly admissible under the Statute. It is inconceivable that counsel would not even make a proffer of that evidence at some point in the trial. Absent any such proffer, however, there is no error that is addressable on direct review.

## IV

■ In its opinion in *Shand,* the Court of Special Appeals construed "sexual conduct" in the Statute to require physical contact indicating a willingness to engage in either vaginal intercourse, as defined in § 461(g),[6] or a sexual act, as defined

---

the proffer made at the in camera hearing and has no support in the trial evidence.

6. Section 461(g) provides:
"*Vaginal intercourse.*—'Vaginal intercourse' has its ordinary meaning of genital copulation. Penetration, however slight, is evidence of vaginal intercourse. Emission of semen is not required."

in § 461(e).[7]  103 Md.App. at 480–81, 653 A.2d at 1007–08. The court also construed the Statute's prohibition against reputation and opinion evidence as to chastity to include specific acts. *Id.* at 482–83, 653 A.2d at 1008–09. We do not agree with either aspect of the analysis.

In the instant matter Shand did not proffer to prove the victim's reputation; he proffered to prove specific conduct. Accordingly, analysis consistent with the Statute addresses the successive hurdles of relevancy and of exceptions to exclusion, as described in Part I hereof. Further, for a number of reasons, we conclude that "sexual conduct" is not limited to "physical contact."

The word "conduct" is defined as "behavior in a particular situation or relation or on a specified occasion." *Webster's Third New International Dictionary* 474 (1976). "Conduct" is: "[p]ersonal behavior; deportment; mode of action; any positive or negative act." *Black's Law Dictionary* 268 (5th ed. 1979). The act of *making an offer* to another person is certainly conduct, whether it is by spoken or written words or by gestures. If the offer is to trade sex for something else, that conduct may reasonably be considered to be sexual in nature.

As a matter of the internal construction of § 461A, the General Assembly used the term "sexual activity" in the second exception, dealing with specific instance evidence "showing the source or origin of semen, pregnancy, disease, or trauma," an enumeration that has strong physical connotations. By way of contrast, the more general concept, "sexual

---

7.  Section 461(e) provides:
    *"Sexual act.*—'Sexual act' means cunnilingus, fellatio, an[i]llingus, or anal intercourse, but does not include vaginal intercourse. Emission of semen is not required. Penetration, however slight, is evidence of anal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body if the penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party and if the penetration is not for accepted medical purposes."

conduct," does not suggest that it is limited to physical contact.

Further, had the General Assembly intended to limit "sexual conduct" to forms of sexual physical contact, it had available for incorporation into the Statute the definitions of "sexual act," "sexual contact," and "vaginal intercourse" appearing in § 461(e), (f) and (g).[8] The Statute and the other provisions codified under the heading, "Sexual Offenses," in Article 27 are products of the 1976 legislative session at which the Statute (then limited only to rape) was House Bill 715 and the sex offenses statute was Senate Bill 358. As introduced, H.B. 715 would have been codified as § 551½. 1976 Laws of Maryland 1541. House Bill 715 was amended in the House Judiciary Committee to codify the Statute as § 461A, under the heading, "Rape." I House Journal 1830–31 (1976); Md. Code (1957, 1976 Repl.Vol.), Art. 27, § 461. House Bill 715 passed the House on March 11. II H.J. 1977.

Senate Bill 358, from introduction to enactment, contained definitions applicable throughout the proposed new heading, "Sexual Offenses." 1976 Laws of Maryland 1530–32. It was approved by the Judicial Proceedings Committee, passed by the Senate, and sent to the House. Ultimately, S.B. 358 was completely rewritten in the House Judiciary Committee, passed by the House as amended, and returned to the Senate on the House legislative day of April 11. 1976 Laws of Maryland 1530–39; II H.J. 3760–61. The Senate concurred in

---

8. Section 461(f) provides:

*"Sexual contact.*—'Sexual contact' as used in §§ 464B and 464C, means the intentional touching of any part of the victim's or actor's anal or genital areas or other intimate parts for the purposes of sexual arousal or gratification or for abuse of either party and includes the penetration, however slight, by any part of a person's body, other than the penis, mouth, or tongue, into the genital or anal opening of another person's body if that penetration can be reasonably construed as being for the purposes of sexual arousal or gratification or for abuse of either party. It does not include acts commonly expressive of familial or friendly affection, or acts for accepted medical purposes."

the House amendments on calendar April 12 and Senate legislative day April 10. II Senate Journal 3277, 3420–30.

Meanwhile, the Senate Judicial Proceedings Committee had reported out H.B. 715 with amendments, which included codifying the Statute as § 464F. II S.J. 3074–75. That change would still have left the Statute under the "Sexual Offenses" heading throughout which all of the definitions in § 461 of S.B. 358 would apply. The Senate passed H.B. 715 with the Senate amendments. *Id.* at 3075. The next day the Senate reconsidered that action, withdrew the amendments, and passed the Statute in the House form on calendar day April 11. *Id.* at 3202. Thus, although the clinically precise definitions in the sex offenses statute apply throughout that heading if a defined term is used, the General Assembly nevertheless continued to use in § 461A the more general, and statutorily undefined term, "sexual conduct." At a minimum, we do no violence to the legislative intent, as manifested by the legislative history, when we construe "sexual conduct" to embrace a wider range of activity than "physical contact."

Cases from other jurisdictions support the view that proffered evidence of prior "sexual conduct" may include oral or written verbal conduct. In *People v. Hauver*, 129 A.D.2d 889, 514 N.Y.S.2d 814 (1987), the trial court allowed the defendant "to testify that the parties allegedly engaged in two prior sexual acts, that they engaged in sexual *conversations* prior to the incident, and even that the victim *stated* that 'she was out to get laid that night.'" 514 N.Y.S.2d at 815 (emphasis added). Those determinations were not questioned on appeal. The singular exclusion upheld was the lower court's decision not to allow the defendant to testify that the victim told him that on the night of the rape "she was out whoring around." *Id.*

Under California law it is clear that "sexual conduct" does not require physical contact. In *People v. Casas*, 181 Cal. App.3d 889, 226 Cal.Rptr. 285, *cert. denied*, 479 U.S. 1010, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986), the court specifically refused to "construe 'sexual conduct' as meaning only acts of sexual

intercourse." 226 Cal.Rptr. at 289. The court held that a victim's "statement that she offered to have sexual intercourse with [a third party] for money ... reflects the speaker's willingness to engage in sexual intercourse" and falls within the rape shield law. *Id.* The court in *People v. Franklin,* 25 Cal.App.4th 328, 30 Cal.Rptr.2d 376 (1994), stated that the ` term "sexual conduct, [as used in the rape shield statute], encompasses any behavior that reflects the actor's or speaker's willingness to engage in sexual activity. The term should not be narrowly construed." 30 Cal.Rptr.2d at 380.

The Alaska rule permits evidence of "previous sexual conduct" of the victim under limited circumstances. Alaska Stat. § 12.45.045 (1962, 1995). Consent was at issue in *Kvasnikoff v. State,* 674 P.2d 302 (Alaska Ct.App.1983), where the defendant sought to admit testimony, *inter alia,* of a witness who "would testify that he overheard [the victim] offer sex in exchange for protection to an unnamed prison inmate less than twenty-four hours prior" to the rape. *Id.* at 304. Another witness would have testified that the victim "made a verbal agreement with him to engage in sexual acts, several weeks prior" to the rape. *Id.* Yet another witness would have testified that the victim "asked him to engage in sex with him, over a year prior" to the rape. *Id.* The court upheld the lower court's exclusion of the evidence based on a balancing test, but the court referred to the proffer as "evidence of the victim's prior sexual conduct." *Id.* at 305.

The Oregon statute provides that " '[p]ast sexual behavior' means sexual behavior other than the sexual behavior with respect to which rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse is alleged." Or.Rev.Stat. § 40.210, Rule 412(4)(b) (1993). In *State v. Thompson,* 131 Or.App. 230, 884 P.2d 574 (1994), the court viewed proffered evidence that the victim had previously offered to trade sex for drugs as specific instances of the victim's "past sexual behavior." 884 P.2d at 577. That court's ultimate determination that the evidence was not admissible turned on whether the evidence met one of the exceptions to exclusion of specific instances of the victim's prior sexual behavior, but there was

no question about the proffer's being evidence of sexual behavior. *Id.*

Federal Rule of Evidence 412 was amended effective December 1, 1994. As amended, the federal rule allows specific instances of sexual behavior of the victim, including specific instances of sexual behavior with the defendant, subject to an in camera hearing. Fed.R.Evid. 412(b)(1)(B); 412(c)(2). Although the Statute is not derived from the federal rule, both resulted from identical concerns. *White,* 324 Md. at 635–36, 598 A.2d at 191–92.[9] The federal and Maryland requirements similarly bar admission of reputation and opinion evidence and admit specific instances of prior sexual conduct or behavior only under limited, albeit sometimes different, circumstances.[10] One commentary on the federal rule has concluded that "[p]ast sexual behavior connotes all activities that involve actual physical conduct, i.e. sexual intercourse and sexual contact, *or that imply sexual intercourse or sexual contact.*" 2 J.B. Weinstein, M.A. Berger & J.M. McLaughlin, *Weinstein's Evidence: Special Alert—Amendment to Federal Rule of Evidence 412,* at 5 (1995) (emphasis added). Indeed, the authors opine that, when offered to prove consent of the victim, evidence would be admissible describing "prior instances of sexual activities between the alleged victim and the accused, as well as statements in which the alleged victim expressed an intent to engage in sexual intercourse with the accused, or voiced sexual fantasies involving the specific accused." *Id.* at 7.

---

**9.** Testimony before United States Senate and House Committees in favor of the bill enacting Fed.R.Evid. 412 centered on concerns that rape victims were unfairly and unnecessarily subjected to humiliation and embarrassment at trial, resulting in underreporting of rape crimes. Senators and Representatives saw the new rule as a way to protect the privacy of rape victims and rights of defendants. 2 J.B. Weinstein, M.A. Berger & J.M. McLaughlin, *Weinstein's Evidence* §§ 412-4 through 412-10 (1995).

**10.** Except for the enumerated exceptions, the federal rule does not allow admission of "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" or "[e]vidence offered to prove any alleged victim's sexual predisposition." Fed.R.Evid. 412(a).

680

■ There is no blanket prohibition in the Statute against admitting evidence of an oral, unconsummated offer, by the victim, to trade sex for drugs. The conduct is "sexual conduct," and the admissibility of evidence of a specific instance of such sexual conduct should be analyzed under the facts and circumstances of each case in accordance with the provisions of the Statute.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.*